# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHIRAG PATEL | CIVIL ACTION NO. |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| REGIONS BANK, an Alabama corporation TRANS UNION, LLC, a Delaware limited liability company, EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation and EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company, | |
| Defendants. | |

## COMPLAINT

NOW INTO COURT, Plaintiff, CHIRAG PATEL (hereinafter referred to as "PLAINTIFF") by and through undersigned counsel, alleges upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, and brings this complaint against the above-named defendant and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. PLAINTIFF brings this action for actual and statutory damages arising from DEFENDANT's violations of the Fair Credit Billing Act (hereinafter referred to as the "FCBA"), 15 U.S.C. § 1666 *et seq*, the Fair Credit Reporting Act (hereinafter referred to as the "FCRA"), 15 U.S.C. § 1681, *et seq*., and Telephone Consumer Protection Act (hereinafter referred to as the "TCPA"), 47 U.S.C. § 227.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this action pursuant to the FCBA, FCRA, TCPA and 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because PLAINTIFF and DEFENDANTS reside and/or do business in the Middle District of Louisiana. Venue is also proper in this District because the acts and transactions that give rise to this action occurred, in substantial part, in the Middle District of Louisiana.

**PARTIES**

4. PLAINTIFF is a natural person residing in Baton Rouge, Louisiana.

5. PLAINTIFF is a "consumer".

6. REGIONS BANK (hereinafter referred to as either "DEFENDANT" or "REGIONS") is an Alabama corporation which regularly extends open ended credit plans to consumers.

7. TRANS UNION, LLC (hereinafter referred to as either "DEFENDANT" or "TRANS UNION") is a Delaware limited liability company which acts as a consumer reporting agency as defined by 15 U.S.C. §1681a(f).

8. TRANS UNION, LLC (hereinafter referred to as either "DEFENDANT" or "TRANS UNION") is a Delaware limited liability company which acts as a consumer reporting agency as defined by 15 U.S.C. §1681a(f).

9. EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter referred to as either "DEFENDANT" or "EXPERIAN") is a Ohio corporation which acts as a consumer reporting agency as defined by 15 U.S.C. §1681a(f).

10. EQUIFAX INFORMATION SERVICES, LLC (hereinafter referred to as either "DEFENDANT" or "EQUIFAX") is a Georgia limited liability company which acts as a consumer reporting agency as defined by 15 U.S.C. §1681a(f).

## STATEMENT OF FACTS

11. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 10 inclusive, above.

12. In 2016 PLAINTIFF obtained a Regions Bank Credit Card.

13. PLAINTIFF used the Regions Bank Credit Card sparingly, never accumulating more than $500 in credit card charges.

14. Each month, PLAINTIFF paid the entire balance owed.

15. On or about December 23, 2017, PLAINTIFF began receiving credit card fraud alerts from another of his credit card companies, Ally Cashback Visa Platinum.

16. The alert asked PLAINTIFF to confirm he was making purchases at Macy's in Lenox Square.

17. PLAINTIFF had not been shopping at Macy's and immediately responded that the charge was fraudulent.

18. Ally refunded the Macy's charge.

19. Concerned about the credit theft, PLAINTIFF checked all of his online financial accounts, including his Regions Bank Credit Card account.

20. On his Regions Bank Credit Car account, PLAINTIFF discovered over 10 pending charges.

21. On December 24, 2017, PLAINTIFF called REGIONS to notify them the card number had been stolen and to decline all the pending charges.

22. REGIONS approved three credit card charges for Macy's at Lenox Square totaling $3,023.29, a credit card charge for $150 at Krogers, and a credit card charge for $15,057.17 at SAKS for a total of $18,230.46.

23. Upon information and belief, REGIONS declined the remaining charges because they exceeded PLAINTIFF'S $18,000 credit limit.

24. The thief maxed out PLAINTIFFS credit card in a 2 hour window.

25. REGIONS never sent a fraud alert to PLAINTIFF.

26. On December 28, 2017, PLAINTIFF went to REGIONS and met with A. Harold Putnam, vice president of the branch, to file a fraud claim for the Macy's, Kroger and SAKS charges.

27. On January 26, 2018, REGIONS mailed correspondence to PLAINTIFF which concluded "that no error occurred" because the "[t]ransaction verified with your card credentials" and "passed fraud analysis."

28. Upon receipt of the letter, PLAINTIFF contacted REGIONS to reiterate the card was stolen and request further details pertaining to the fraud analysis conducted.

29. In February of 2018, PLAINTIFF filed a police report and provided the reference number to Roger Orr, REGIONS' fraud investigator.

30. Around this time, REGIONS began robo-calling PLAINTIFF'S cell phone number in an attempt to collect the unauthorized charges.

31. PLAINTIFF immediately contacted REGIONS, reiterated that his card was stolen and that he did not owe the money, and requested REGIONS to stop robo-calling his cell phone number.

32. Also in February of 2018, REGIONS began credit reporting PLAINTIFF'S

account as delinquent.

33. PLAINTIFF went back to Mr. Putnam twice in March of 2018 to discuss updates on the investigation of his fraud claim.

34. Mr. Putnam notified PLAINTIFF that the fraud department was still investigating his claim.

35. However, REGIONS continued to credit report the unpaid, unauthorized fraud charges.

36. REGIONS also continued robo-calling PLAINTIFF'S cell phone number in an attempt to collect the unpaid fraud charges.

37. Finally, REGIONS continued to assess late fees and charge interest on the unauthorized balance.

38. In May of 2018, PLAINTIFF sought to rent an apartment.

39. His application was declined due to the negative tradeline.

40. REGIONS' tradeline is the only negative tradeline on PLAINTIFF'S credit report.

41. PLAINTIFF was forced to have his brother rent the apartment for him.

42. On June 22, 2018, PLAINTIFF mailed letters to EQUIFAX, EXPERIAN and TRANS UNION explaining the unauthorized charges and disputing the REGIONS' tradeline.

43. On July 8, 2018, PLAINTIFF reported his dispute with REGIONS to the Consumer Financial Protection Bureau.

44. On July 9, 2018, REGIONS mailed to PLAINTIFF the receipts of the unauthorized transactions, reflecting the purchases of two bracelets and perfume at SAKS, and a luxury watch from Macy's.

45. None of the signatures on the receipts spell PLAINTIFF'S name.

46. None of the signatures on the receipts even resemble each other.

47. For example, the signature on the Kroger receipt is a single oval.

48. The signatures on the 3 Macy's receipts include a mess of circles, a single circle with a line at the end, and a very narrow right pointing arrow.

49. As of July 14, 2018, REGIONS' was credit reporting that PLAINTIFF owed $19,774.

50. On July 16, 2018, another one of PLAINTIFF's credit providers, Discover Card, closed PLAINTIFF'S credit card account because of the "delinquent credit obligation as reported" by REGIONS.

51. On July 18, 2018, REGIONS' agent, Sam Lewis, called PLAINTIFF and notified him that the investigation into PLAINTIFF'S fraud claim is closed with PLAINTIFF owing the charges incurred by the card thief.

52. Throughout this process PLAINTIFF called REGIONS over 20 times and has spoken with all level of employees, from people at the call center to the vice president, in his attempts to remove the unauthorized charges.

53. PLAINTIFF also contacted the credit reporting agencies to dispute the unauthorized charges.

54. Despite PLAINTIFF'S efforts, none of the credit reporting agencies fixed the tradeline.

55. Despite PLAINTIFF'S efforts, REGIONS failed to remove the unauthorized charges or even update the tradeline to reflect that it is in dispute.

56. REGIONS also continues to robo-call PLAINTIFF'S cell phone number.

57. Since March of 2018, REGIONS has robo-called PLAINTIFF'S cell phone

number at least 36 times.

58.     In addition to owing over $19,000 in unauthorized charges, late fees and accruing interest, PLAINTIFF's interest rates have gone up, PLAINTIFF has been unable to rent an apartment under his name and has had at least one credit card company close his account.

59.     As a direct result of REGIONS robo-calls placed to his cellular telephone services, PLAINTIFF experienced the invasion of his privacy, the unwanted deprivation of the use of his cellular phones, inconvenience, and the loss of electricity used during the reception of said phone calls.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FCBA 15 U.S.C. §1666(a)
### AGAINST REGIONS

60.     PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 59 inclusive, above.

61.     Within 90 days of receipt of PLAINTIFF'S dispute, REGIONS was required to conduct a reasonable investigation of PLAINTIFF'S fraud claims and determine whether PLAINTIFF owes the fraudulent charges. 15 U.S.C. §1666(a).

62.     REGIONS investigation was blatantly unreasonable.

63.     The charges were out of character for PLAINTIFF'S typical purchases, in locations PLAINTIFF does not typically frequent, and the signatures on the receipts do not match PLAINTIFF'S signature.

64.     Further, the thief incurred more charges in 2 hours than PLAINTIFF has incurred in a month.

65.     In comparison, card issuer Ally was able to identify the fraudulent activity after the first Macy's purchase and notify PLAINTIFF of the theft.

66. PLAINTIFF has spent countless hours on the phone with various REGIONS' employees disputing the debt, filed a police report, disputed to the credit reporting agencies and filed a complaint with Financial Consumer Protection Bureau before finally being forced to obtain counsel to deal with his current inability to obtain credit based on these fraudulent charges.

67. As a result of REGIONS' FCBA violations, PLAINTIFF's interest rates have gone up, PLAINTIFF has been unable to rent an apartment under his name and has had at least one credit card company close his account.

68. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE FCRA 15 U.S.C. §§ 1681s-2(b) and 1681s-2(b)(1)(E)(ii) AGAINST REGIONS

69. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 68 inclusive, above.

70. Pursuant to 15 U.S.C. § 1681s-2(b), after receiving notice from the consumer reporting agency that the consumer has disputed the information pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher shall conduct a reasonable investigation regarding the information, and delete the information if it is found to be inaccurate.

71. A furnisher has a duty to provide complete and accurate information to credit reporting agencies, including disputes. 15 U.S.C. § 1681s-2(b)(1)(E).

72. After its investigation, if an item is found to be inaccurate, a furnisher shall request deletion of that tradeline. 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

73. On June 22, 2018, PLAINTIFF disputed the improper tradeline to TRANS UNION, EQUIFAX and EXPERIAN.

74. PLAINTIFF also spent significant time disputing the debt and improper tradeline directly to REGIONS.

75. As such, REGIONS received notice of the dispute from the three credit reporting agencies and PLAINTIFF.

76. Despite PLAINTIFF's credible fraud claims, REGIONS continues to report that PLAINTIFF owes REGIONS money for the unauthorized charges.

77. By ignoring PLAINTIFF's dispute, REGIONS did not conduct a reasonable investigation.

78. Further, REGIONS failed to report that the debt was disputed.

79. By intentionally failing to conduct a reasonable reinvestigation REGIONS violated 15 U.S.C. § 1681s-2(b).

80. By refusing to request deletion of a tradeline based on inaccurate information, or report that the debt was disputed, REGIONS violated 15 U.S.C. § 1681s-2(b)(1)(E).

81. As a result of REGIONS' FCRA violations PLAINTIFF's interest rates have gone up, PLAINTIFF has been unable to rent an apartment under his name and has had at least one credit card company close his account.

82. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

### THIRD CLAIM FOR RELIEF

**VIOLATIONS OF THE FCRA 15 U.S.C. §§ 1681i(a)(1), 1681i(a)(1)(A), and (a)(5) AGAINST TRANS UNION, EXPERIAN AND EQUIFAX**

83. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 82 inclusive, above.

84. Upon notice of a dispute, a consumer reporting agency shall "conduct a reasonable

reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1).

85. A consumer reporting agency has 30 days to conduct a reasonable reinvestigation. 15 U.S.C. § 1681i(a)(1)(A).

86. If an item is found to be inaccurate, the CRA shall promptly delete the information (or modify as appropriate), and notify the furnisher that the information has been modified or deleted. 15 U.S.C. § 1681i(a)(5)

87. On June 22, 2018, PLAINTIFF disputed the improper tradeline to TRANS UNION, EQUIFAX and EXPERIAN, explaining his fraud claim.

88. According to the 3 credit reporting agencies, their reinvestigation showed that PLAINTIFF owed the disputed fraud charges.

89. Upon information and belief, none of the credit reporting agencies conducted a reasonable reinvestigation independent of REGIONS'.

90. All 3 credit reporting agencies continue to report the disputed REGIONS tradeline.

91. Because their reinvestigation completely ignored PLAINTIFF'S fraud claim, their reinvestigation was not reasonable.

92. Upon information and belief, all 3 credit reporting agencies intentionally and willfully failed to conduct a reinvestigation separate to REGIONS.

93. As a result of REGIONS' FCRA violations PLAINTIFF's interest rates have gone up, PLAINTIFF has been unable to rent an apartment under his name and has had at least one credit card company close his account.

94. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

## **FOURTH CLAIM FOR RELIEF**

### **VIOLATIONS OF THE TCPA 27 U.S.C. § 227(b)(1)**
### **BROUGHT BY PLAINTIFF INDIVIDUALLY**

95. PLAINTIFF repeats, re-alleges and incorporates by reference, paragraphs 1 through 94 inclusive, above.

96. The TCPA provides the following:

> (1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>>> […]
>>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b).

97. The TCPA defines an "automatic telephone dialing system" (also known as an "autodialer") as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1).

98. Upon information and belief, at all relevant times herein, REGIONS used, controlled, and/or operated an "automatic telephone dialing system" (also referred to herein as an "autodialer") as defined by the TCPA, 47 U.S.C. § 227(a)(1), 47 C.F.R. § 64.1200(f)(2), and the

July 10, 2015 Federal Communications Commission TCPA Omnibus Declaratory Ruling and Order.

99.   REGIONS agents performed the acts alleged in this Complaint while acting within the scope of their actual or apparent authority.

100.   In February of 2018, REGIONS began placing robo telephone calls to PLAINTIFF's cellular telephone service and leaving automated messages in an attempt to collect the unauthorized credit card charges.

101.   Upon receipt of the collection calls, PLAINTIFF immediately contacted REGIONS, notified REGIONS that the charges were the result of fraud and still under investigation.

102.   PLAINTIFF asked REGIONS to stop robo-calling his cell phone number and leaving automated messages on his voicemail in an attempt to collect the unauthorized charges.

103.   Despite revoking his consent to be called, REGIONS continued to call PLAINTIFF approximately 36 times.

104.   As a result of these calls, REGIONS is liable for actual damages, statutory damages and treble damages.

105.   PLAINTIFF is entitled to damages totaling $500.00 per call. See 47 U.S.C. § 227(b)(3).

106.   PLAINTIFF further alleges that DEFENDANT caused said telephone calls to be placed willfully and/or knowingly, entitling PLAINTIFF to the maximum of treble damages, or $1,500.00 per call. *Id.*

## DEMAND FOR JURY TRIAL

107.   Please take notice that PLAINTIFF demands trial by jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF respectfully prays that this Court grant the following relief in PLAINTIFF's favor, and that judgment be entered against the DEFENDANTS for the following:

(1) For actual damages incurred by PLAINTIFF pursuant to 15 U.S.C. § 1640(a)(1);

(2) Twice the amount of any finance charge in connection with the transaction, for no less than $500 and no more than $5,000 pursuant to 15 U.S.C. §1640(a)(2)

(3) For statutory damages awarded to PLAINTIFF, not to exceed $1,000 per violation, pursuant to 15 U.S.C. § 1681n;

(4) For statutory damages awarded to PLAINTIFF, not to exceed $1,500 per offending call, pursuant to 47 U.S.C. § 227(b)(3);

(5) For reasonable attorneys' fees for all services performed by counsel in connection with the prosecution of these claims,;

(6) For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

(7) For any and all other relief this Court may deem appropriate.

DATED this 24th day of August 2018.

**GESUND AND PAILET, LLC**

*/s/ Keren E. Gesund, Esq.*
Keren E. Gesund, Esq.
Louisiana Bar No. 34397
3421 N. Causeway Blvd., Suite 805
Metairie, LA  70002
Tel: (504) 836-2888
Fax: (504) 265-9492
keren@gp-nola.com
Attorney for Plaintiff