UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHIRAG PATEL                                        CIVIL ACTION

VERSUS

REGIONS BANK, ET AL.                      NO: 18-CV-00796-BAJ-RLB

## RULING AND ORDER

Before the Court is **Regions Bank's Motion to Compel Arbitration and to Stay Plaintiff's Claims Against Regions Bank Pending Arbitration (Doc. 15).** Also before the Court is **Plaintiffs' Motion to Compel TransUnion and Experian to Arbitration (Doc. 24)**[1]. Oral argument is not required. For the reasons stated below, Regions Bank's ("Regions") motion is **GRANTED** and Plaintiff's motion is **DENIED**.

I.     FACTUAL HISTORY

Chirag Patel "Plaintiff" alleges that in 2016, he obtained a Regions Bank Credit Card ("Regions Card"). (Doc. 1 at ¶ 11). Plaintiff asserts that he used the card sparingly, and always paid the full balance in a timely manner. (*Id.* at ¶¶ 13-14). Plaintiff alleges that on or about December 23, 2017, he received alerts from another of his credit card companies, Ally Cashback Visa Platinum ("Ally"), notifying him that his card had been used at a Macy's Department Store in Lennox Square, in Atlanta,

---

[1] Plaintiff's request for arbitration is contingent upon the Court finding that Regions Bank's arbitration provision is enforceable against Plaintiff. (Doc. 24-1).

1

Georgia. (*Id.* at ¶¶ 15,16). Plaintiff avers that he notified Ally that the charge was fraudulent, and Ally refunded the charge. (*Id.* at ¶¶ 17-18). Plaintiff claims that he checked his Regions Card account, and found ten fraudulent pending charges, totaling $18,230.46. (*Id.* at ¶¶ 19-22). Plaintiff alerted Regions of the allegedly fraudulent activity on December 24, 2017. (*Id.* at ¶ 21). Plaintiff alleges that Regions approved three of the ten pending charges: a charge at Macy's for $3,023.29, a charge at Krogers grocery store for $150.00 and a charge at SAKS department store for $15,057.17. (*Id.* at ¶ 22). Plaintiff asserts that Regions never sent him a fraud alert. (*Id.* at ¶ 25).

Despite efforts to show that his card was charged fraudulently, Plaintiff avers that he began receiving automated phone calls from Regions requesting payment for the outstanding balance on his account. (*Id.* at ¶ 30). Plaintiff also claims that Regions began reporting his account as delinquent to Equifax, Experian, and TransUnion. (*Id.* at ¶ 32). Plaintiff claims that Regions continued to report the unpaid balance, continued to robocall him, and continued to assess late fees and interest on the unpaid balance, despite his claims that the charges were fraudulent. (*Id.* at ¶¶ 34-37).

Plaintiff claims that he attempted to rent an apartment in May 2018, but was denied due to a negative entry on his credit report. (*Id.* at ¶ 39). Plaintiff alleges that on June 22, 2018, he mailed letters to Equifax, Experian, and Trans Union explaining the unauthorized charges, and disputing the Regions tradeline. (*Id.* at ¶ 42). Plaintiff avers that upon reporting his dispute with Regions to the Consumer

Financial Protection Bureau, he received copies of the receipts from the allegedly unauthorized transactions, none of which contained Plaintiff's signature, and none of which were similar to each other.

Plaintiff asserts that on July 18, 2018, Regions' agent Sam Lewis ("Lewis") called Plaintiff and notified him that the investigation resulted in a finding that Plaintiff owed the disputed charges. (*Id.* at ¶ 59). Plaintiff now brings charges against Regions, TransUnion, and Experian[2] pursuant to 15 U.S.C. § 1666 *et seq.*, 15 U.S.C. § 1681, *et seq.*, and 47 U.S.C. § 227.

Regions does not necessarily dispute any of the facts alleged by Plaintiff, and only argues that such allegations are subject to a binding arbitration clause. (Doc. 15-1 at p. 1). Specifically, Regions claims that Plaintiff signed a Visa Consumer Credit Card Application (the "Application") on November 22, 2016, which provides that the account would be governed by the Credit Card Agreement, to be sent with the Regions Card. (*Id.*). Regions further alleges that the Credit Card Agreement provides that "all disputes regarding an Account or the Agreement are subject to binding arbitration, which impacts [Plaintiff's] rights to participate in a class action or similar judicial proceeding." (*Id.* at p.p. 1-2). The arbitration provision of the Credit Card Agreement provides:

> **ARBITRATION AND WAIVER OF JURY TRIAL. Except as expressly provided herein, you and we agree that either party may elect to resolve by BINDING ARBITRATION any controversy, claim, counterclaim, dispute or disagreement between you and us, whether asserted or brought in a direct, derivative, assignee, survivor, successor, beneficiary or**

---

[2] Plaintiff also brought suit against Equifax Information Services LLC, but settled those claims on October 24, 2018 (Doc. 23).

> personal capacity and whether arising before or after the effective date of this Agreement (any "Claim") [ . . . ] If either party elects to arbitrate, the Claim shall be settled by **BINDING ARBITRATION under the Federal Arbitration Act ("FAA")**. This agreement to arbitrate shall include any Claim involving our current and former officers, directors, employees, agents, representatives, contractors, subcontractors, parent, subsidiaries, affiliates, successors, assigns, any third party that assigned any agreements to us and any of the respective current and former employees, officers, agents or directors of such affiliates or third parties, and any such Claim against any of those parties may be joined or consolidated with any related Claim against us in a single arbitration proceeding.

Regions asserts that all of Plaintiff's claims fall under the scope of the arbitration agreement.

## II. LEGAL STANDARD

This Court has the authority to compel arbitration pursuant to 9 U.S.C. § 4, which provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

Arbitration is a matter of contract. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69, (2010). Agreements to arbitrate fall within the scope and coverage of the Federal Arbitration Act (the "Act"), and must be enforced in both state and federal courts. *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). If a dispute presents multiple claims, some which fall under the scope of the arbitration, and some which do not, the former must be sent to arbitration, even if the result is piecemeal litigation. *Id.*

4

## III. ARGUMENTS

### A. Regions' Motion to Compel Arbitration

First, Regions asserts that the arbitration agreement between itself and Plaintiff is valid. (Doc. 15-1 at p. 5). Specifically, Regions claims that Plaintiff signed the Application, which specifically referenced the Credit Card Agreement, had an account opened with Regions, and used the credit card. (*Id.*).

Next, Regions argues that the current dispute falls within the scope of the Agreement. (*Id.*). Regions points to the expansive language of the arbitration clause, in particular, that it applies to "any claims, controversies, counterclaims, disputes, or disagreements relating to the Account." (*Id.*). Regions also argues that the arbitration provision specifically provides that "any claim, demand or request for compensation or damages from or against [Regions] is subject to the arbitration clause."

Plaintiff argues that Regions did not establish that it sent Plaintiff a copy of the Credit Card Agreement containing the arbitration clause, resulting in Plaintiff not being aware of the terms of the arbitration agreement before he began using the Regions Card. (Doc. 22 at p. 3). Plaintiff cites *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) which provides that federal courts must follow the ordinary state laws of contract formation. Plaintiff argues that because the Application states that the "Account and the Credit Card Agreement are governed by Alabama law and federal law" that this court must interpret and apply Alabama laws concerning contract formation. Plaintiff also cites *TranSouth Fin. Corp. v. Bell*, 739

5

So. 2d 1110, 1114 (Ala. 1999) which provides that a motion to compel arbitration is analogous to a motion for a summary judgement. (Doc. 22 at pp. 2-3). Plaintiff argues that because Regions did not actually *allege* that he received the document containing the arbitration provision, Regions has failed to satisfy its burden under the summary judgment standard applicable to motions to compel arbitration under Alabama law. (*Id.* at p. 3).

In its response to Plaintiff's opposition, Regions claims that it *did* allege that it sent Plaintiff the Credit Card Agreement. (Doc. 39 at p. 1). Regions further asserts that it is its practice to always send a copy of the Credit Card Agreement with a new credit card, and that Plaintiff never stated he *did not* receive the Credit Card Application. (*Id.*).

### B. Plaintiff's Motion to Compel Arbitration

Plaintiff argues that if he is made to participate in arbitration under the Credit Card Agreement, TransUnion and Experian should be made to join in the arbitration discussions as well. (Doc. 24-1). Plaintiff argues that TransUnion and Experian are credit reporting agencies that materially benefitted from Regions' failure to properly investigate his fraud claims. (*Id.* at p. 2). Plaintiff asserts that TransUnion and Experian are paid by Regions to report consumer financial information and to provide credit reports for certain people. (*Id.*). Plaintiff also argues that because these payments arise from the underlying contract between Plaintiff and Regions, that TransUnion and Experian are captured under the arbitration clause of the Credit Card Agreement. (*Id.*). Finally, Plaintiff argues that TransUnion and Experian could

6

not exist but for the credit agreements between consumers and creditors, as those credit agreements are what authorize TransUnion and Experian to receive financial information on consumers to report. (Doc. 36 at p. 4).

IV. **ANALYSIS**

A. **Plaintiff is Obligated to Participate in Arbitration**

As a threshold matter, the Application sets forth that the account and credit card agreement are governed by Alabama and Federal Law. (Doc. 15-2 at p. 6). Plaintiff, by executing the Application, acquiesced to the laws of the State of Alabama governing this dispute arising from the Credit Card Agreement. Therefore, the Court shall analyze the motion *sub judice* pursuant to Alabama law.

Plaintiff relies on *Moore-Dennis v. Franklin*, 201 So. 3d 1131 (Ala. 2016) wherein the Alabama Supreme Court found that absent the presentation of any evidence that a plaintiff accessed the specific webpages or emails containing an amended arbitration agreement, the plaintiff could not be held to the terms of the agreement. *Id.* In *Franklin*, the bank alleged that the plaintiff elected to receive notifications of amendments to the credit card agreement through the bank's online banking portal. *Id.* at 1135. The plaintiff filed affidavits claiming that he did not sign up for online banking alerts, that he did not have internet access, and that he never once logged in to his online banking account. *Id.* The bank ultimately conceded that it did not send the account agreement or arbitration addendum via regular mail, and that the only way for the plaintiff to have accessed the information would have been to login online. *Id.* at 1136. The Court ultimately found that absent a showing that

the plaintiff actually accessed the notifications online, and in light of evidence that the plaintiff did not elect to utilize online notifications, the plaintiff could not be held to the terms of the arbitration agreement. The Court's opinion also turned on the fact that there was no evidence provided by the bank to establish that the plaintiff actually logged on to view the new policy.

Here, Regions claims that the credit card is packaged with the Credit Card Agreement as a matter of course. Regions also submitted the affidavit of Kimberly Burkhalter Townsley[3] wherein she states that Plaintiff was sent the Credit Card Agreement. It is uncontroverted that Plaintiff received the Regions Card and began using it. Further, it is noteworthy that, unlike in *Franklin*, Plaintiff in this matter has not alleged that he *didn't* receive the arbitration agreement. Rather, Plaintiff asserts that Regions never affirmatively claimed that he did receive it.

In *American Bankers Ins. Co. of Florida v. Tellis* 192 So.3d 386 (Ala. 2015), the Alabama Supreme Court found that when arbitration provisions are listed on the declaration page of a policy as being part of this agreement, there was a duty to investigate the rest of the forms for the arbitration section. *Id.* at 390. Under *Tellis*, a plaintiff may still be bound by the terms of an arbitration clause even if the arbitration clause of the agreement is lost, as the plaintiff had notice that such terms *should have* been there. *Id.*

In this matter, Plaintiff acknowledges that he was made aware of the existence of the arbitration agreement when he signed the Credit Card Application. Even if

---

[3] Kimberly Burkhalter Townsley is a Vice President in Regions' Legal Department and its Custodian of Records.

8

Plaintiff had not received a copy of the Card Holder Agreement containing the arbitration clause, Alabama law deems that he was on notice that he *should have* received such documents, and thereby had a duty to investigate their whereabouts. Plaintiff used the credit card anyway.

The Court finds that Regions has made sufficient allegations to support the claim that Plaintiff received the Credit Card Agreement. Regions claims that as a matter of course, the Credit Card Agreement is attached to the new credit card itself. Regions meets the summary judgment standard for motions to compel arbitration set forth in *Bell*.

### B. Experian and TransUnion are not Obligated to Participate in Arbitration

Plaintiff argues that TransUnion and Experian, simply by virtue of receiving payment to run a credit report on Plaintiff, have somehow brought themselves under the scope of Plaintiff and Regions' contract under the theory of "direct benefits estoppel." The Court finds this argument to be unavailing.

Parties are assumed to contract for themselves only, a presumption which only may be overcome if the intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1075-76. Moreover, there is a rebuttable presumption that non-signatories to a contract cannot be bound by arbitration agreements. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006). There is no provision setting forth that TransUnion or Experian were to directly benefit from the terms of the Application or the Credit Card Agreement. In fact, it is not even clear that any

benefits received by TransUnion or Experian arose as a *result* of the contract at all.

Direct benefit estoppel applies when a non-signatory knowingly exploits the agreement containing the arbitration clause. *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, 2014 WL 4986674, at *5 (M.D. La. Sept. 29, 2014). To "knowingly exploit" a contract means that a non-signatory, during the life of the contract, embraces the contract despite their non-signatory status. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) citing approvingly *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001). At no time did TransUnion or Experian "knowingly exploit" Plaintiff's agreement with Regions. TransUnion and Experian provide credit reports, and have contracted with Regions to generate credit reports for Regions' customers. The mutual obligations between the credit reporting agencies and Regions are wholly independent of the agreements made between Regions and its customers.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Regions Bank's Motion to Compel Arbitration and to Stay Plaintiff's Claims Against Regions Bank Pending Arbitration (Doc. 15) is GRANTED.**

10

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel Trans Union and Experian to Arbitration (Doc. 24) is DENIED.

Baton Rouge, Louisiana, this 25th day of June, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA